USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/4/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                           :

XINWA CHANG,
                           :

               Plaintiff,       :        12 Civ. 3181 (WHP)

                           :

         -against-          :        MEMORANDUM & ORDER

METROPLUS HEALTH PLAN and NYC
HEALTH AND HOSPITAL CORP.,     :

               Defendants.   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

WILLIAM H. PAULEY III, District Judge:

        Plaintiff Xinwa Chang brings this employment discrimination action under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), and the New York City Human Rights Law (NYCHRL). Defendants MetroPlus Health Plan and New York City Health and Hospital Corporation move for summary judgment on all claims. For the following reasons, Defendants' motion is granted and this action is dismissed.

## BACKGROUND

        Chang is an Asian woman who was born in China. MetroPlus Health Plan, Inc. is a subsidiary of the New York City Health and Hospital Corporation which offers low-cost and no-cost health insurance plans to eligible residents of New York City. In October 2005, MetroPlus hired Chang as a data analyst. Defs.' Ex. E (ECF No. 46-4).[1] Initially, she was assigned to MetroPlus's Utilization Management Department, where her primary responsibility was to prepare analytic reports requested by her supervisor, Dr. Robert Wicks. Defs.' Ex. E; Decl. of John Kim ¶ 20 (ECF No. 43).

---

[1] "Defs.' Ex." refers to the exhibits attached to the Declaration of Benjamin Welikson (ECF No. 46).

In 2008, MetroPlus underwent a reorganization and reassigned all data analysts to its Quality Management Department. Decl. of Maurice Sahar ¶ 4 (ECF No. 44). Chang's new supervisor in the Quality Management Department was Karen Miller. Sahar Decl. ¶ 5; Defs.' Ex. F.

The transfer did not sit well with Chang. She complained it was unfair to expect her to perform assignments for both the Utilization Management and the Quality Management Departments. Dep. of Xinwa Chang (Defs.' Ex. D,[2] Pl.'s Ex. C) at 23:23-24:11; Decl. of Karen Miller ¶ 9 (ECF No. 42). But above all, Chang made clear her antipathy for her new supervisor, Ms. Miller. Chang complained that Miller had "no knowledge" of how to do her job. Chang Dep. 23:23-25.

Chang responded poorly to Miller's directions. In October 2008, Miller asked Chang to prepare a report concerning hospital visits. Defs.' Ex. G; Miller Decl. ¶ 11. Chang replied by email that "[i]t is *impossible* to do it," that she did "not have time to list [the] errors" in Miller's request, and that she would instead create a report based on specifications from a 2006 report. Defs.' Ex. G (emphasis in original). Contrary to Miller's instructions, Chang drafted a report according to her own specifications and sent it to the end user who had requested the report rather than to Miller.[3] Miller Decl. ¶ 13. As a result of this incident, in November 2008 Miller issued Chang an "Employee Warning Notice." Defs.' Ex. H; Pl.'s Ex. G.[4]

Shortly after the transfer, Chang began a pattern of unscheduled absences. Miller Decl. ¶ 17. Miller and Maurice Sahar, the Senior Associate Director of the Quality Management

---

[2] Chang challenges the completeness of the copy of her deposition transcript that Defendants attached to their motion, but Defendants are required only to attach the transcript excerpts relied on in their motion. Chang attaches the entire transcript as Plaintiff's Exhibit C. Chang also challenges the authenticity of Defendants' Exhibit K, which appears due to Defendants' mislabeling of multiple documents with the same set of Bates numbers. Her objection is irrelevant, as this Court does not rely on Defendants' Exhibit K in deciding this motion.

[3] MetroPlus refers to the doctors that request reports from analysts as "end users."

[4] Chang disputes the authenticity of Defendants' Exhibit H, but does not dispute receiving a warning notice. She states Plaintiff's Exhibit G is the actual notice she received.

Department, held a counseling session with Chang on December 7, 2008 to discuss her excessive unscheduled absences. Defs.' Ex. J; Pl.'s Ex. H.[5] Chang claims that sometime in 2008, she gave Miller a doctor's note regarding an absence and Miller told her "Your doctor is Chinese." Chang Dep. 73:9-74:20. Miller denies this. Miller Decl. ¶¶ 19-21.

Unhappy in her new department, Chang requested a transfer out of Quality Management. Decl. of Ryan Harris ¶ 7 (ECF No. 45). She submitted a note from her doctor, dated September 30, 2008, stating she was suffering from depression and "stressed from the relationship with her current supervisor; it will be beneficial for her recovery if she can be transferred to a different department." Defs.' Ex. L. MetroPlus denied her transfer request on October 9, 2008. Defs.' Ex. M. After her transfer was denied, Chang continually voiced her belief that Miller was unqualified for her job. Chang Dep. 103:3-24.

In December 2010, Dr. Wicks, for whom Chang still did most of her work, left MetroPlus. Miller Decl. ¶¶ 24-25. Miller attempted to schedule a meeting with Chang to discuss what her role and responsibilities would be now that she no longer had work from Dr. Wicks. Miller Decl. ¶ 26. In a series of emails, Chang resisted scheduling any meeting with Miller, stating in one that "[w]orking for you is nightmare and I had enough." Defs.' Ex. N. In another, Chang told Miller "you do not qualify working as my boss." Defs.' Ex. N.

Miller forwarded these emails to John Kim, the director of Labor Relations, for possible disciplinary action. Miller Decl. ¶ 28. Kim pursued disciplinary action against Chang and scheduled a disciplinary conference for April 13, 2011. Defs.' Ex. O. Chang was represented by her union representative, Tommy Smith. Defs.' Ex. P. At the conference, Smith claimed Miller had asked Chang whether her doctor was Chinese. Kim Decl. ¶ 24. Miller

---

[5] Again, Chang disputes the authenticity of Defendants' Exhibit J but does not dispute that a counseling session was held. She states Plaintiff's Exhibit H is the record she received of the counseling session.

denied this. Kim Decl. ¶ 24. Chang claims that at the conference she announced her intention to file a discrimination charge, Chang Dep. 85:23-24, though Miller denies this happened. Miller Decl. ¶ 29 n.1. Kim, as the impartial hearing officer, decided disciplinary action was warranted because of Chang's refusal to meet with Miller, her inappropriate emails, and her insistence at the hearing that there had been nothing inappropriate with her behavior. Kim Decl. ¶ 29. Kim suspended Chang without pay for 20 business days. Defs.' Ex. P; Kim Decl. ¶ 30.

A week after the conference, Chang filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Defs.' Ex. C. In the charge, Chang accused Miller of discriminating against her because of her race, national origin, and disability (which the charge describes only as attributable to her "work environment and working conditions"). Defs.' Ex. C. The charge also asserts she was retaliated against after putting MetroPlus on notice she would be filing an EEOC charge. Defs.' Ex. C.

Kim issued his disciplinary findings in May 2011. Nevertheless, Chang resumed sending Miller disrespectful emails the following month. Miller asked Chang to create a table to assist in creating a report on patient readmissions. Defs.' Ex. Q. Chang asked for the phone number of the end user who requested the report from Miller, but Miller told Chang to communicate only with her and that it would be inappropriate for Chang to contact the end user. However, Chang repeatedly emailed Miller insisting she have the number of the end user. Exasperated, Miller asked Chang for an example of a question that only the end user could answer. Chang responded, stating "More than THREE years I work for you and more than THREE times I gave READMISSION report to you. You ask an example now?" Defs.' Ex. Q (emphases in original). When Chang submitted her work product to Miller, Miller responded with a few questions and changes she wanted made. Defs.' Ex. Q. Chang answered that she

"did this report using the knowledge I learned from the people and not from your description."

Defs.' Ex. Q. After several more emails requesting changes to Chang's work, Chang told Miller

"We have exchanged many email. I can see that you do not have <u>BASIC BASIC BASIC</u>

knowledge for the report." Defs.' Ex. Q. Miller forwarded Chang's emails to the Labor

Relations department. Miller Decl. ¶ 39.

As a result of these emails, Kim again initiated new disciplinary charges against

Chang and scheduled a conference for July 26, 2011. Defs.' Ex. R. Chang was again

represented by Smith, her union representative. A disciplinary conference was held on August 4,

2011. Kim Decl. ¶¶ 38-40. And again, Chang refused to acknowledge any inappropriateness in

the tone of her emails and insisted that Miller didn't "know what she was doing." Kim Decl. ¶

45; Defs.' Ex. T.

In view of her disciplinary history, Kim terminated Chang effective September

14, 2011. Kim Decl. ¶¶ 46-48; Defs.' Ex. T. Pursuant to the collective bargaining agreement,

Chang appealed her termination to an independent hearing officer at the New York City Health

and Hospital Corporation. Kim Decl. ¶ 49; Defs.' Ex. U. Chang was again represented by

Smith. Kim Decl. ¶ 51. The independent hearing officer found that termination was appropriate

and denied Chang's appeal. Defs.' Ex. U.

On April 23, 2012 Chang filed this action. In her amended complaint, Chang

alleges race, national origin, and disability discrimination under federal law and New York City

law.

DISCUSSION

I.    <u>Legal Standard</u>

Summary judgment should be granted if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. <u>See</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970). Once the moving party has made an initial showing that there is no genuine dispute of material fact, the non-moving party cannot rely on the "mere existence of a scintilla of evidence" to defeat summary judgment, <u>Liberty Lobby</u>, 477 U.S. at 252, but must set forth "specific facts showing that there is a <u>genuine issue for trial</u>." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (emphasis in original); <u>see also</u> <u>Niagara Mohawk Power Corp. v. Jones Chem., Inc.</u>, 315 F.3d 171, 175 (2d Cir. 2003) (citation omitted). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." <u>Beyer v. Cnty. of Nassau</u>, 524 F.3d 160, 163 (2d Cir. 2008) (quoting <u>Guilbert v. Gardner</u>, 480 F.3d 140, 145 (2d Cir. 2007)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (quoting <u>Matsushita</u>, 475 U.S. at 586-87).

All factual ambiguities are resolved and all inferences are drawn in favor of the non-moving party. <u>See</u> <u>Liberty Lobby</u>, 477 U.S. at 255; <u>see also</u> <u>Jeffreys v. City of N.Y.</u>, 426 F.3d 549, 553 (2d Cir. 2005). A party opposing summary judgment "is not entitled to rely solely on the allegations of her pleading, but must show that there is admissible evidence sufficient to

-6-

support a finding in her favor on the issue that is the basis for the motion." Fitzgerald v. Henderson, 251 F.3d 345, 361 (2d Cir. 2001). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998).

Where, as here, a party is proceeding pro se, the Court must read the party's papers liberally and interpret them "to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). But a pro se party's "bald assertion, completely unsupported by evidence" is not sufficient to overcome a motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir.1991).

II.     Burden-Shifting Framework

Title VII and ADA claims are assessed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See, e.g., McMillan v. City of N.Y., 711 F.3d 120, 125 (2d Cir. 2013); Zann Kwan v. Andalex Group LLC, 737 F.3d 834, 843 (2d Cir. 2013); Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010); see also Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-58 (1981). "At the first stage of McDonnell Douglas, a plaintiff 'bears the burden of establishing a prima facie case of discrimination,' which includes demonstrating that '[s]he suffered an adverse employment action . . . under circumstances giving rise to an inference of discriminatory intent.'" Maraschiello v. City of Buffalo Police Dep't, 709 F.3d 87, 92 (2d Cir. 2013) (quoting Mathirampuzha v. Potter, 548 F.3d 70, 78 (2d Cir. 2008)). "Once the prima facie case has been shown, 'the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason' for the adverse employment action." United States v. Brennan, 650 F.3d 65, 93 (2d Cir. 2011) (quoting McDonnell Douglas, 411 U.S. at 802). "The burden then shifts back to the plaintiff 'to show that

[the defendant's] stated reason for [the adverse employment action] was in fact pretext.'" Brennan, 650 F.3d at 93 (quoting McDonnell Douglas, 411 U.S. at 804).

For many years, the NYCHRL was construed similarly to federal and state anti-discrimination laws. However, in 2005 the New York City Council amended the NYCHRL to broaden its coverage. See generally Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 108-09 (2d Cir. 2013). The amendments require that "similarly worded provisions of federal and state civil rights laws" be interpreted "as a floor below which the City's Human Rights law cannot fall, rather than a ceiling above which the local law cannot rise." Local Civil Rights Restoration Act of 2005, N.Y.C. Local L. No. 85 § 1; see also Mihalik, 715 F.3d at 109. The Amendments also require the NYCHRL to "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws . . . have been so construed." Local Civil Rights Restoration Act of 2005, N.Y.C. Local L. No. 85 § 7; see also Mihalik, 715 F.3d at 109.

"It is unclear whether, and to what extent, the McDonnell Douglas burden-shifting analysis has been modified for NYCHRL claims." Mihalik, 715 F.3d at 110 n.8. But under the NYCHRL, a "plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason." Mihalik, 715 F.3d at 110 n.8. "The employer may present evidence of its legitimate, non-discriminatory motives to show the conduct was not caused by discrimination, but it is entitled to summary judgment on this basis only if the record establishes as a matter of law that 'discrimination play[ed] no role' in its actions." Mihalik, 715 F.3d at 110 n.8 (alteration and emphasis in original) (quoting Williams v. N.Y.C. Hous. Auth., 872 N.Y.S.2d 27, 38, 40 n.27 (App. Div. 1st Dep't)).

III.   Prima Facie Case of Discrimination

To make out a prima facie case of discrimination, a plaintiff must show "(1) that [s]he is a member of the class protected by the statute; (2) that [s]he was qualified for the position; (3) that [s]he experienced an adverse employment action; and (4) that this adverse employment action occurred under circumstances giving rise to an inference of discrimination." Matusick v. Erie Cnty. Water Auth., 739 F.3d 51, 67 (2d Cir. 2014) (discussing Title VII claims); see also Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008) (ADA claims).

a.   Adverse Employment Action

Chang identifies several alleged adverse employment actions: the warning notice she received in November 2008, the counseling session for unscheduled absences in December 2008, the discipline charge and unpaid suspension in April 2011, and the disciplinary action and her termination in August and September 2011.[6] For Title VII and ADA claims, a plaintiff must file an EEOC charge within 300 days of the alleged discrimination. 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a); McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 75 (2d Cir. 2010); Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 69 (2d Cir. 2006). Because Chang filed her EEOC charge on April 20, 2011, her claims under federal law for adverse actions prior to June 24, 2010 are time barred, leaving only the unpaid suspension and her termination.[7] The statute of limitations for NYCHRL claims is three years. Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 238 (2d Cir. 2007). This action was filed on April 23, 2012, so NYCHRL claims for

---

[6] Her amended complaint also states "Metroplus submitted false information to deny the appeal of my termination." Am. Compl. at p. 3. Even if this were true, it is better considered as a possibly pretextual explanation for Chang's termination than as a separate adverse employment action.

[7] Though she was terminated after filing her EEOC charge, a district court may consider adverse employment actions "where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." Butts v. City of N.Y. Dep't of Housing Pres. & Dev., 990 F.2d 1397, 1402-03 (2d Cir. 1993), superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684 (2d Cir. 1998).

adverse actions prior to April 23, 2009 are time-barred, again leaving only the unpaid suspension and termination.

b. Disability Discrimination

"In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show (a) that [her] employer is subject to the ADA; (b) that [s]he is disabled within the meaning of the ADA or perceived to be so by [her] employer; (c) that [s]he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that [s]he suffered an adverse employment action because of [her] disability." Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008) (citing Jacques v. DiMarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004)). The same elements apply to discrimination claims under the NYCHRL. Kinneary v. City of N.Y., 601 F.3d 151, 158 (2d Cir. 2010).

i. Whether Chang Was "Disabled"

1. ADA

A "disability" under the ADA is "a physical or mental impairment that substantially limits one or more of the major life activities of an individual," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). The definition of "disability" must be "construed in favor of broad coverage of individuals under [the ADA]." § 12102(4)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." § 12102(2)(A).

Chang claims she was discriminated against because she suffers from depression. Her depression was a result of her work environment and her relationship with Karen Miller in

particular. Chang Dep. 72:10-73:3; 31:14-23; 120:9-24. Chang testified that "they ask me to do a lot of work, caused my depression." Chang Dep. 72:14-15. She further testified that "if not because of working environment, I wouldn't have depression or loss of sleep or cry." Chang Dep. 54:9-11. The doctor's note she provided to excuse her absences stated that Chang was suffering from depression and "is stressed from the relationship with her current supervisor." Defs.' Ex. L. And in her opposition on this summary judgment motion, Chang concedes "Plaintiff's depression was caused by [MetroPlus President and CEO] Arnold Saperstein, and Karen Miller." Def.'s Br. 12 (ECF No. 51).

However, "[j]ob-related stress – particularly that caused by working with a particular supervisor – is not considered a disability under the ADA." Thompson v. Fed. Reserve Bank of N.Y., No. 01 Civ. 11640 (DC), 2004 WL 330243, at *8 (S.D.N.Y. Feb. 23, 2004); see also Schneiker v. Fortis Ins. Co., 200 F.3d 1055, 1062 (7th Cir. 2000) ("Standing alone, a personality conflict between an employee and a supervisor – even one that trigger's the employee's depression – is not enough to establish that the employee is disabled, so long as the employee could still perform the job under a different supervisor."); Harrison v. N.Y.C. Hous. Auth., No. 01 Civ. 3664 (LAP), 2001 WL 1658243, at *2 (S.D.N.Y. Dec. 26, 2001) ("Even assuming that [plaintiff] suffered extreme work-related stress due to her relationship with her supervisors, that does not mean that she is 'disabled' within the definition of the ADA."); Potter v. Xerox Corp., 88 F.Supp. 2d 109, 112-13 (W.D.N.Y. 2000) ("[P]laintiff's impairment is his inability to work under [a particular supervisor]. That does not rise to the level of a disability under the [ADA]."), aff'd mem., 1 F. App'x 34 (2d Cir. 2001).

Moreover, Chang testified that she received treatment for her depression for at most six months and then stopped because her symptoms subsided. Chang Dep. 52:9-57:17.

Sleep was the only life activity Chang's depression interfered with. Chang Dep. 52:9-15. Her depression ended after she stopped interacting with Miller. Chang Dep. 120:9-24. "[T]emporary, non-chronic impairments of short-duration, with little or no long term or permanent impact, are usually not disabilities" under the ADA. Kennebrew v. N.Y.C. Hous. Auth., No. 01 Civ. 1654 (JSR) (AJP), 2002 WL 265120, at *18 n.32 (S.D.N.Y. Feb. 26, 2002); see also Adams v. Citizens Advice Bureau, 187 F.3d 315, 316-17 (2d Cir. 1999). Here, six months of interference with Chang's sleep does not qualify as a substantial limitation on a major life function. Because Chang was not "disabled" under the ADA, Defendants are entitled to summary judgment on her ADA claim.

## 2. NYCHRL

The NYCHRL provides broader protections than the ADA, largely because of its broader definition of "disability." See Phillips v. City of N.Y., 884 N.Y.S.2d 369, 373 n.3 (App. Div. 1st Dep't 2009). A "disability" under the NYCHRL is "any physical, medical, mental or psychological impairment, or a history or record of such impairment." N.Y.C. Admin. Code § 8-102[16].

It is unclear whether depression caused by an employee's relationship with her supervisor is a disability under the NYCHRL. See Raisley v. First Manhattan Co., 2004 WL 2059539, at *4 n.3 (N.Y. Sup. Ct. Sept. 9, 2004) ("In general, claims of disability resulting from stress caused by a particular supervisor have not been well-received."). But for the reasons that follow, even if Chang's job-induced depression is a protected disability under local law, she has failed to make a prima facie showing of discrimination.

ii. <u>Whether Chang Suffered an Adverse Employment Action Because of Her Alleged Disability</u>

Chang must "show that her termination occurred under circumstances that give rise to an inference of discrimination." <u>Chertkova v. Conn. Gen. Life Ins. Co.</u>, 92 F.3d 81, 91-92 (2d Cir. 1996); <u>see also</u> <u>Serdans v. N.Y. & Presbyterian Hosp.</u>, 977 N.Y.S.2d 196, 198 (App. Div. 1st Dep't 2013) (NYCHRL requires showing "an inference of discriminatory animus"). But Chang points to <u>no</u> evidence giving rise to an inference that she suffered an adverse action as a result of her depression. As Chang has failed to make a prima facie showing of disability discrimination, Defendants are entitled to summary judgment on her ADA claim and her disability claim under the NYCHRL.

c. <u>Race/National Origin Discrimination</u>

As with her disability claim, to make a prima facie showing that she was discriminated on the basis of her race or national origin, Chang must show that : (1) she was in a protected group; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." <u>Terry v. Ashcroft</u>, 336 F.3d 128, 137-38 (2d Cir. 2003); <u>Collins v. N.Y.C. Transit Auth.</u>, 305 F.3d 113, 118 (2d Cir. 2002).

"[T]here is no unbending or rigid rule about what circumstances allow an inference of discrimination when there is an adverse employment decision." <u>Chertkova</u>, 92 F.3d at 91.

> The circumstances that give rise to an inference of discriminatory motive include actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus, preferential treatment given to employees outside the protected class, . . . or a pattern of recommending the plaintiff for positions for which he or she is not qualified and failure to surface plaintiff's name for positions for which he or she is well-qualified.

Chertkova, 92 F.3d at 91 (internal citations omitted). "To raise an inference of discriminatory intent, the comments and behaviors [plaintiff objected to] must be linked in some way to plaintiff's protected status. This linkage is typically found in the use of invidious or ethnically degrading comments." Ochei v. Coler/Goldwater Mem'l Hosp., 450 F. Supp. 2d 275, 283 (S.D.N.Y. 2006) (alteration in original).

The only fact in this case linked to race or national origin is Chang's assertion that upon her return from a sick day with a doctor's note, Miller said to her "Your doctor is Chinese." Chang Dep. at 73:19-74:13. Miller denies saying this. Miller Decl. ¶ 21. But even if true, it does not give rise to an inference of discrimination. Without more, "stray remarks, even if made by a decisionmaker, do not constitute sufficient evidence to make out a case of employment discrimination." Danzer v. Norden Sys., Inc., 151 F.3d 50, 56 (2d Cir. 1998); see also Melman v. Montefiore Med. Ctr., 946 N.Y.S.2d 27, 39 (App. Div. 1st Dep't 2012) ("stray remarks" by decision maker not indicative of discrimination under NYCHRL). In determining whether a remark is probative of discrimination, courts consider "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." Henry v. Wyeth Pharm., Inc., 616 F.3d 134, 149 (2d Cir. 2010).

Here, the alleged remark was made sometime in 2008, well over two years before Chang's suspension in April 2011 and her termination in September 2011. It was not uttered in the context of the decision-making process, and though it was made by a supervisor, Miller was not the one who ultimately decided to terminate Chang. Kim terminated her, and that decision

was upheld by an independent hearing officer. Assuming Miller commented on the fact that Chang's doctor was Chinese, it was a "stray comment" not probative of discrimination. Chang has failed to make a prima facie showing of race or national origin discrimination and MetroPlus is entitled to summary judgment on her Title VII and NYCHRL claims.

### d. Retaliation

Finally, Chang alleges she was retaliated against after informing MetroPlus she intended to file an EEOC charge. To make out a prima facie case of retaliation, a plaintiff must show "1) participation in a protected activity; 2) the defendant's knowledge of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action." Zann Kwan, 737 F.3d at 844 (internal quotations omitted).[8]

"[E]ven without direct evidence of causation, 'a plaintiff can indirectly establish a causal connection to support a . . . retaliation claim by showing that the protected activity was closely followed in time by the adverse [employment] action.'" Zann Kwan, 737 F.3d at 845 (omission and alteration in original) (quoting Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty., 252 F.3d 545, 554 (2d Cir. 2001)).

Accepting Chang's testimony that she announced her intention to file an EEOC complaint at the April 13, 2011 disciplinary conference, in the absence of other evidence, both her unpaid suspension and termination would be close enough in time to allow for an inference that they were acts of retaliation. See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d

---

[8] The standard is stated slightly differently under the NYCHRL: "[A] plaintiff must show that (1) he or she engaged in a protected activity as that term is defined under the NYCHRL, (2) his or her employer was aware that he or she participated in such activity, (3) his or her employer engaged in conduct which was reasonably likely to deter a person from engaging in that protected activity, and (4) there is a causal connection between the protected activity and the alleged retaliatory conduct." Brightman v. Prison Health Serv., Inc., 970 N.Y.S.2d 789, 791 (App. Div. 2d Dep't 2013). Though under the NYCHRL a plaintiff need only show "conduct which was reasonably likely to deter a person from engaging in . . . protected activity," the NYCHRL analysis here is the same as under Title VII because Chang complains only of her suspension and termination, which qualify as adverse employment actions.

Cir. 2010) (five months not too long to establish a causal relationship). However, a temporal connection is a weak showing of causation. "Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001). Chang received a formal warning as early as November 2008. Her insubordinate behavior led to more serious disciplinary charges, and it was not until the conference discussing those charges that she disclosed her intention to file an EEOC charge. The escalating disciplinary charges against Chang, which began well before MetroPlus could have become aware of her intent to file an EEOC charge, negates any inference of retaliation that might arise from the timing of the adverse employment actions. Therefore Chang fails to make a prima facie showing of retaliation.

IV.    Legitimate, Nondiscriminatory Reasons for Chang's Suspension and Termination

Even if Chang had made a prima facie showing of discrimination, MetroPlus's legitimate, nondiscriminatory reasons for the adverse employment actions would still require summary judgment for MetroPlus on Chang's Title VII and ADA claims.[9] Chang's employment history showed she was often unwilling or unable to follow directions. In 2008, Chang told Karen Miller that "[i]t is impossible" to create the report Miller requested and she did "not have time to list [the] errors" with Miller's request. Defs.' Ex. G. Chang drafted the report according to her own specifications, and instead of sending it to Miller, sent it directly to the end user who requested it from Miller. Miller Decl. ¶ 13. Chang received an "Employee Warning Notice" for that insubordination. Defs.' Ex. H. In March 2011, Chang refused to even meet with Miller to

---

[9] This may not be enough to overcome an NYCHRL claim. "The employer may present evidence of its legitimate, non-discriminatory motives to show the conduct was not caused by discrimination, but it is entitled to summary judgment on this basis only if the record establishes as a matter of law that 'discrimination play[ed] no role' in its actions." Mahlik, 715 F.3d at 110 n.8 (alteration and emphasis in original) (quoting Williams, 872 N.Y.S.2d at 38).

discuss her job responsibilities. Defs.' Ex. N. And then in June, when Miller asked for help in creating a report on patient readmissions, Chang repeatedly insisted that Miller give her the phone number of the end user who had requested the report. Defs.' Ex. Q. Miller told Chang it was inappropriate for her to contact the end user. Instead of accepting this instruction from her supervisor, Chang became combative and indignant. Defs.' Ex. Q.

Importantly, Chang repeatedly criticized Miller and questioned her qualifications. Chang testified that beginning in 2008, she would "speak up" in every meeting about her belief that Miller "[d]idn't have the knowledge" to be her supervisor. Chang Dep. 103:5-24. In March 2011, Chang sent Miller an email telling her "[w]orking for you is nightmare and I had enough." Defs.' Ex. N. Three days later, Chang replied to an email from Miller rescheduling a meeting by saying "you do not qualify working as my boss." Defs.' Ex. N. When, as discussed above, Chang insisted on calling an end user to ask questions about a requested report, Miller asked for an example of a question that only an end user could answer. Chang lashed out at Miller, saying "More than THREE years I work for you and more than THREE times I gave READMISSION report to you. You ask an example now?" Defs.' Ex. Q. In that same exchange, Chang told Miller "I can see that you do not have BASIC BASIC BASIC knowledge for the report." Defs.' Ex. Q.

Chang's insubordination – and her refusal to acknowledge she had acted inappropriately – led to escalating disciplinary actions against her. Chang's actions, including telling her supervisor "[w]orking for you is nightmare and I had enough," had predictable consequences. Defs.' Ex. N. Chang has presented no evidence that these entirely legitimate reasons for her suspension and ultimate termination are pretextual. Even if she had made a

prima facie showing of discrimination, MetroPlus would still be entitled to summary judgment on her Title VII and ADA claims.

CONCLUSION

For the foregoing reasons, Defendants MetroPlus Health Plan and the New York City Health and Hospital Corporation's motion for summary judgment dismissing this action is granted. The Clerk of Court is directed to terminate the motion pending at ECF No. 40 and mark this case closed.

Dated:    March 4, 2014
           New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*Copies to*:

Xinwa Chang
218 Autumn Ave.
Brooklyn, NY 11208
*Plaintiff Pro Se*

Zev S. Singer, Esq.
Benjamin Welikson, Esq.
The New York City Law Department
100 Church Street
New York, NY 10007
*Counsel for Defendants*